IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT KANSAS CITY

| | |
|---|---|
| LLOYDS OF LONDON SYNDICATE 2003, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) No.: 2:15-cv-02681-DDC-GLR<br>) |
| FIREMAN'S FUND INSURANCE COMPANY OF OHIO, | )<br>)<br>) |
| 312 Walnut Street, Suite 1100<br>Cincinnati, Ohio 45202 | )<br>)<br>) |
| SERVE: Commissioner of Insurance<br>ATTN: Legal Division<br>Kansas Insurance Department<br>420 SW 9th Street<br>Topeka, Kansas 66612 | )<br>)<br>)<br>)<br>) |
| Defendant. | )<br>) |

## AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

COMES NOW plaintiff Lloyds of London Syndicate 2003, by and through the undersigned counsel, pursuant to 28 U.S.C. § 2201(a), and for its amended complaint for declaratory relief and damages against defendant Fireman's Fund Insurance Company of Ohio, states and alleges as follows:

1. This is an action for declaratory relief, pursuant to 28 U.S.C. § 2201(a). As described more fully below, plaintiff also seeks money damages in this action.

2. Plaintiff Lloyds of London Syndicate 2003 ("Lloyds") is incorporated under the laws of the United Kingdom, with its principal place of business in London, England.

3. Defendant Fireman's Fund Insurance Company of Ohio ("FFIC") is an Ohio corporation, located in Columbus, Ohio. On information and belief, FFIC is also a subsidiary of Allianz SE of Munich, Germany.

4. On information and belief, FFIC has submitted to jurisdiction and venue in this court by transacting business in this state by (1) issuing insurance policies to persons and business entities in the state of Kansas; and (2) defending and indemnifying insureds in this state. Further, under the policy discussed *infra*, FFIC has consented to jurisdiction and venue in this court by stating that, "[i]n the event of our failure to pay any amount claimed to be due under this policy, we agree to submit to the jurisdiction of any court of competent jurisdiction within the United States in which a suit for those amounts may be brought." Additionally, FFIC has designated the commissioner of insurance in this state as its "true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding."

5. This court has jurisdiction over this action, pursuant to 28 U.S.C. § 2201(a).

6. This court has diversity jurisdiction over the parties, pursuant to 28 U.S.C. § 1332(a)(1), as the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

7. FFIC issued a claims made policy providing "securities brokers/dealers" errors and omissions liability coverage to Brecek & Young Advisors, Inc. ("BYA"), a California company with its principal place of business in Folsom, California. The policy has a policy number of 8-17 ME 07318221 and a policy period running from December 1, 2005 to December 1, 2006. The policy has limits of liability of $2,000,000 per claim and $10,000,000 in the aggregate. (Hereinafter, this insurance policy will be referred to as the "FFIC policy.")

2

{0185159.DOCX}

8. Under the FFIC policy, FFIC has agreed to pay on behalf of BYA all sums which BYA becomes legally obligated to pay as defense costs and damages because of any act, error or omission of BYA, or of any person for whose acts BYA is legally liable, in rendering or failing to render professional services for others in the conduct of BYA's professional operations, including those of a broker/dealer.

9. The FFIC policy provides under INSURING AGREEMENT, Section III. TERRITORY AND CLAIMS MADE PROVISIONS, in pertinent part, as follows:

> This Policy applies to acts, errors, omissions, or PERSONAL INJURIES which occur anywhere in the world provided that claim is made or suit is brought against the INSURED in the United States of America, its territories or possessions, and provided further, that such acts, errors, omissions or PERSONAL INJURIES occurred:
>
> > A. During the POLICY PERIOD, and then only if claim is first made against the INSURED during the POLICY PERIOD and is reported to the Company in writing during the POLICY PERIOD, or the Extended Reporting Period (if applicable) . . . .

10. However, the FFIC policy also provides under INSURING AGREEMENT, Section V. LIMIT OF LIABILITY, SUPPLEMENTARY PAYMENTS, AND DEDUCTIBLE AMOUNT, Subsection G:

\* \* \*

> Two or more claims arising out of a single act, error, omission or PERSONAL INJURY or a series of related acts, errors, omissions or PERSONAL INJURIES shall be treated as a single claim.
>
> All such claims, whenever made, shall be considered first made during the POLICY PERIOD or Extended Reporting Period in which the earliest claim arising out of such acts, errors, omissions or PERSONAL INJURIES was first made and reported to the Company in writing and all such claims shall be subject to the same Limit of Liability.

11. Lloyds issued to BYA a claims-made "Broker/Dealer and Registered Representatives Professional Liability Policy" effective December 1, 2006 through December 1,

3

2007 (the "Lloyds policy"). The Lloyds policy had limits of $2 million "Each Claim" and in the aggregate, with a $50,000 "Each Claim" Retention for Broker/Dealer insureds.

12. The Lloyds policy includes a provision addressing "Interrelated Wrongful Acts" which provides:

> All Claims based upon or arising out of the same Wrongful Act or Interrelated Wrongful Acts shall be considered a single Claim and each such single Claim shall be deemed to have been made on the earlier of the following:
>
> A. when the earliest Claim arising out of such Wrongful Act or Interrelated Wrongful Acts was first made; or
>
> B. when notice was provided to the Insurer . . . concerning a Wrongful Act giving rise to such Claim.

13. "Interrelated Wrongful Acts" are also addressed under the exclusions section of the Lloyds policy and the policy contains at least two provisions indicating Lloyds is not responsible for indemnifying or defending BYA for claims made during the policy period which are interrelated with claims made prior to the policy period.

14. On September 22, 2005, Michael Knotts commenced a lawsuit in the Court of Common Pleas for Summit County, Ohio, styled *Michael P. Knotts v. B & G Financial Network, Inc., et al.* On December 19, 2006, the National Association of Securities Dealers, Inc. ("NASD") notified BYA that it had been named as a respondent in an arbitration proceeding brought by Knotts. The Knotts claim alleged that certain individual respondents had fraudulently induced Knotts to retire early, churned his investment accounts and failed to properly advise him about issues impacting his financial portfolio. On information and belief, BYA subsequently timely tendered the defense of the Knotts case to FFIC under the FFIC policy.

15. On June 13, 2006, attorneys for Pauline and Donald Colaner notified BYA of their intent to bring a NASD arbitration proceeding against it and several individual respondents. The

4

Colaner claimants alleged that BYA was liable for negligently failing to supervise the individual respondents, who provided unsuitable investment advice and made fraudulent misrepresentations regarding investments. On information and belief, BYA subsequently timely tendered the defense of the Colaner case to FFIC under the FFIC policy.

16. In or about May of 2007, Paul and Marie Wahl served upon BYA a statement of claim filed with the NASD Department of Arbitration. Approximately two months later, the Wahls amended their complaint to add an additional 25 claimants. The Wahls and the other complainants alleged, among other things, that they were sold unsuitable investment products and that BYA and others had engaged in the flipping and churning of annuities.

17. On June 22, 2007, Leia Farmer, chief compliance officer for BYA, properly tendered the Wahl claim to FFIC under the FFIC policy by sending a cover letter (attaching the Wahl statement of claim and various arbitration papers) to FFIC's claims adjuster, Lancer Claims, stating, "I would like to submit a claim under the firm's Error and Omission Coverage policy number #8-17 ME 07318221."

18. Following BYA's tender of the Wahl claim to FFIC on June 22, 2007, the Wahl claim was somehow forwarded to Lloyds for consideration of defense and indemnification under the Lloyds policy, although it does not appear that Wahl was ever formally tendered to Lloyds. Nonetheless, on August 9, 2007, Lancer Claims stated that Lloyds agreed to defend Wahl subject to a reservation of rights of no coverage.

19. BYA specifically requested Lloyds to assign the defense of the Wahl claim to Jeffrey Jamieson of the law firm Blackwell Sanders, L.L.P., since he was already representing BYA in the Knotts and Colaner claims and was familiar with BYA's business practices.

Ultimately, Lloyds approved the request and assigned Mr. Jamieson to defend Wahl on behalf of BYA under the Lloyds policy.

20. During the defense of Wahl, a dispute arose between BYA and Lloyds over the number of "Each Claim" $50,000 retentions applicable to Wahl. Lloyds maintained that the 26 Wahl claimants were distinct and unrelated to one another and therefore subject to separate $50,000 retentions, whereas BYA contended that they were interrelated by common facts and therefore subject to one $50,000 retention.

21. Mr. Jamieson defended and ultimately settled the Knotts, Colaner and Wahl claims on behalf of BYA.

22. As to Wahl specifically, on or about March 3, 2009, BYA, through Mr. Jamieson, entered into a Mutual Release and Settlement Agreement with the claimants in that matter. BYA's portion of the settlement was $669,092.21, paid on March 27, 2009. BYA paid an additional $312,767.38 for fees and expenses related to the defense of the Wahl Arbitration.

23. Lloyds prorated the defense costs (attributing defense equally to each of the twenty-six claims in the Wahl Arbitration), and then paid only indemnity for each claim that exceeded the $50,000 "Each Claim" retention, for a total payment by Lloyds of $384,657.79 for defense and indemnity.

24. The total paid in defense and indemnity for the Wahl Arbitration was $1,366,517.38. After deducting the $384,657.79 paid by Lloyds, and one $50,000 "Each Claim" Retention from the total incurred amount of $1,366,517.38, the net unreimbursed amount paid by BYA for defense and settlement of the Wahl Arbitration is $931,859.59.

25. On October 5, 2009, BYA filed a declaratory judgment action against Lloyds in this Court, styled *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, Case No.

{0185159.DOCX}

09-CV-2516 JAR/GLR, wherein it advanced claims for declaratory judgment and breach of contract respecting the $50,000 each claim retentions applied by Lloyds to the Wahl claim. Among other things, BYA sought a declaration that Wahl constituted a single "Claim" under the Lloyds policy and that it was therefore subject to only one $50,000 retention (as opposed to twenty-six separate retentions).

26. The parties in Case No. 09-CV-2516 JAR/GLR filed cross motions for summary judgment on the issues in dispute. During the summary judgment briefing, Lloyds argued that the claims in Wahl were unrelated but that, even if they were interrelated, they would relate back to a point in time prior to the commencement of the Lloyds policy period, such that no coverage would apply. This Court eventually granted BYA's motion for summary judgment, finding that only one $50,000 "Each Claim" retention applied to the Wahl claim, and entering judgment against Lloyds in the amount of $1,155,541.73. This Court also found in Case No. 09-CV-2516 JAR/GLR that Wahl did not share a "sufficient factual nexus" with Colaner and Knotts, such that it was not interrelated with those earlier claims. Lloyds thereafter appealed to the Tenth Circuit.

27. On August 9, 2013, the Tenth Circuit issued its mandate reversing this Court's entry of summary judgment in favor of BYA in Case No. 09-CV-2516 JAR/GLR, and remanded for further proceedings. *See Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, 715 F.3d 1231, 1243 (10th Cir. 2013).

28. The Tenth Circuit held that the Wahl, Knotts and Colaner claims were all related, as "[s]everal common facts connect the Wahl, Knotts, and Colaner Arbitrations." Under the terms of both the Lloyds and FFIC policies, if the Knotts, Colaner and Wahl Claims are interrelated, they are to be treated as a single claim deemed to have arisen at the time of the first such claim. *See id.* at 1238-39.

29. The Tenth Circuit also held that, "[b]ecause applying the plain language of the [Lloyds] Policy, the Wahl, Knotts, and Colaner Arbitrations were connected by common facts, circumstances, decisions, and policies," the claims asserted in the Wahl claim arose from wrongful acts interrelated to the wrongful acts committed outside, and before, the Lloyds policy period. As such, there is no coverage for Wahl under the Lloyds Policy. *See id.* at 1239.

30. On February 25, 2015, the parties in Case No. 09-CV-2516 JAR/GLR tried the underlying action to this Court.

31. On July 10, 2015, this Court issued its memorandum and order in Case No. 09-CV-2516 JAR/GLR finding, among other things, that Lloyds was "estopped from denying full coverage of the Wahl Arbitration as a single claim" and that "BYA is entitled to reimbursement of $931,859.59." This Court deferred ruling on BYA's request for prejudgment interest pending further briefing on the issue by the parties.

32. On October 6, 2015, this Court entered its memorandum and order granting BYA's request for prejudgment interest. That same day, the Court also entered judgment in favor of BYA and against Lloyds in Case No. 09-CV-2516 JAR/GLR, ordering that "Plaintiff [BYA] is entitled to recover from Defendant [Lloyds] the amount of $931,859.59, plus prejudgment interest in the amount of $559,151.46, plus costs."

33. Lloyds disputed and denied BYA's claims in Case No. 09-CV-2516 JAR/GLR. Nonetheless, to the extent that Lloyds is now liable to BYA for the amounts stated in this Court's October 6, 2015 judgment, Lloyds submits that FFIC is liable to Lloyds for the very same amounts.

34. Under the above quoted portions of the FFIC policy and, based upon the ruling made by the Tenth Circuit, coverage for the Wahl matter properly lies under the FFIC policy because the Wahl, Knotts and Colaner cases are interrelated and should be treated "as a single

claim" that was timely filed during the FFIC policy period. As such, FFIC, not Lloyds, should be held liable for any and all defense and indemnification in relation to the Wahl matter. Lloyds seeks declaratory judgment, in this regard, pursuant to 28 U.S.C. § 2201(a).

35. Additionally, Lloyds is entitled to damages from FFIC in the amount of $384,657.79 (which corresponds to the amount Lloyds paid in defending and settling the Wahl claim) and for the amounts stated in the Court's October 6, 2015 judgment in Case No. 09-CV-2516 JAR/GLR (i.e., "$931,859.59, plus prejudgment interest in the amount of $559,151.46, plus costs"). In total, Lloyds is seeking to recover $1,875,668.84 in this matter, plus all applicable pre and post-judgment interest and costs.

WHEREFORE, pursuant to 28 U.S.C. § 2201(a), plaintiff Lloyds of London Syndicate 2003 prays for declaratory judgment, damages, costs, and pre and post-judgment interest in accordance with the aforesaid, and for such other relief as this court deems just and appropriate.

*Respectfully submitted,*

**NORRIS & KEPLINGER, LLC**

*/s/ Bruce Keplinger*
Bruce Keplinger, KS #09562
Christopher J. Lucas, KS #20160
9225 Indian Creek Parkway
Corporate Woods, Building 32, Suite 750
Overland Park, Kansas 66210
(913) 663-2000/(913) 663-2006 FAX
**bk@nkfirm.com**
**cjl@nkfirm.com**
**ATTORNEYS FOR LLOYDS OF LONDON SYNDICATE 2003**

## Demand for Jury Trial

COMES NOW plaintiff Lloyds of London Syndicate 2003, by and through the undersigned counsel, pursuant to Fed. R. Civ. Pro. 38, and hereby demands a trial by jury on all issues so triable.

*Respectfully submitted,*

**NORRIS & KEPLINGER, LLC**

/s/ *Bruce Keplinger*
Bruce Keplinger, KS #09562
Christopher J. Lucas, KS #20160
9225 Indian Creek Parkway
Corporate Woods, Building 32, Suite 750
Overland Park, Kansas 66210
(913) 663-2000/(913) 663-2006 FAX
bk@nkfirm.com
cjl@nkfirm.com
**ATTORNEYS FOR LLOYDS OF LONDON SYNDICATE 2003**

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of November, 2015, a true and correct copy of the above and foregoing was served via electronic mail on:

John V. Hager, CA SBN #61384
Christine W. Chambers, CA SBN #277022
319 E. Carrillo Street
Santa Barbara, CA 93101
Telephone: (805) 966-4700
Fax: (805) 966-4120
JHager@hdlaw.com
CChambers@hdlaw.com
ATTORNEYS FOR DEFENDANT FIREMAN'S FUND
INSURANCE COMPANY OF OHIO *pro hac vice*

Kevin D. Case, MO #41491; KS #14570
Patric S. Linden, MO #49551; KS #18305
2600 Grand Boulevard, Suite 300
Kansas City, Missouri 64108
Phone: (816) 979-1500
FAX: (816) 979-1501
patric.linden@caselinden.com
kevin.case@caselinden.com
ATTORNEYS FOR DEFENDANT FIREMAN'S FUND
INSURANCE COMPANY OF OHIO

                                        */s/ Christopher J. Lucas*
                                        Attorney for Plaintiff Lloyds of London Syndicate 2003