## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LLOYDS OF LONDON SYNDICATE 2003,** | |
| **Plaintiff,** | |
| **v.** | **Case No.  15-CV-2681-DDC-GLR** |
| **FIREMAN'S FUND INSURANCE COMPANY OF OHIO,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

This diversity action is an insurance coverage dispute between two insurers of a mutual insured.  Plaintiff asserts that defendant must reimburse it for payments it previously made to the insured and payments that it is obligated to pay to the insured under a judgment in another civil lawsuit.  Plaintiff bases its claim on the theory that insurance coverage properly lies with defendant.  Plaintiff has filed an Amended Complaint for Declaratory Relief and Damages (Doc. 31), seeking declaratory relief under 28 U.S.C. § 2201(a) and damages in the amount of $1,875,668.84.

This matter comes before the Court on defendant's Motion to Dismiss or, in the Alternative, to Transfer Venue (Doc. 19) and a Renewed Motion to Dismiss or, in the Alternative, to Transfer Venue (Doc. 32).  On July 28, 2015, defendant filed its Motion to Dismiss or, in the Alternative, to Transfer Venue (Doc. 19), seeking dismissal of plaintiff's original Complaint (Doc. 1).  On November 2, 2015, plaintiff filed an Unopposed Motion for Leave to File an Amended Complaint (Doc. 29).  The Court granted that motion (Doc. 30), and plaintiff filed the Amended Complaint on November 10, 2015 (Doc. 31).  Thereafter, defendant

1

filed its Renewed Motion to Dismiss or, in the Alternative, to Transfer Venue (Doc. 32), seeking dismissal of the Amended Complaint.

Because plaintiff has filed an Amended Complaint, defendant's motion to dismiss the original Complaint (Doc. 19) is moot.  The Court thus denies defendant's Motion to Dismiss or, in the Alternative, to Transfer Venue (Doc. 19) as moot.  And, for the reasons explained below, the Court also denies defendant's Renewed Motion to Dismiss or, in the Alternative, to Transfer Venue (Doc. 32).

## I.     Factual Background

The following facts are taken from plaintiff's Amended Complaint (Doc. 31) and viewed in the light most favorable to plaintiff.  *ASARCO LLC v. Union Pac. R.R. Co.*, 755 F.3d 1183, 1188 (10th Cir. 2014) (explaining that, on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]." (citation and internal quotation marks omitted)).

### *The Parties*

Plaintiff Lloyds of London Syndicate 2003 (hereinafter "plaintiff" or "Lloyds") is incorporated under the laws of the United Kingdom, and its principal place of business is in London, England.  Defendant Fireman's Fund Insurance Company of Ohio (hereinafter "defendant" or "Fireman's Fund") is an Ohio corporation located in Columbus, Ohio.[1]  Plaintiff and defendant issued separate insurance policies to a non-party Brecek & Young Advisors, Inc.

---

[1]     Plaintiff states in the Amended Complaint that defendant is an Ohio corporation located in Columbus Ohio.  *See* Doc. 31 at ¶ 3.  Plaintiff asserts no allegations about defendant's principal place of business.  Defendant states, however, that its principal place of business is in Novato, California.  *See* Doc. 32 at 3.  The parties do not challenge the Court's subject matter jurisdiction here.  Nevertheless, the Court independently considers this question and concludes that subject matter jurisdiction exists under 28 U.S.C. § 1332 because the parties' unchallenged assertions establish complete diversity of citizenship and the requisite amount in controversy.

("BYA").  BYA is a California company with its principal place of business in Folsom, California.

### Defendant's Insurance Policy

Defendant issued a claims made policy providing "securities brokers/dealers" errors and omission liability, with a policy period running from December 1, 2005, to December 1, 2016 ("defendant's policy").  Defendant's policy limits liability to $2,000,000 per claim and $10,000,000 in the aggregate.  Under defendant's policy, defendant promised to pay on behalf of BYA all sums which BYA becomes legally obligated to pay as defense costs and damages because of any act, error, or omission of BYA, or of any person for whose acts BYA is legally liable, in rendering or failing to render professional services for others in the conduct of BYA's professional operations, including those of a broker/dealer.

Defendant's policy, under a provision called "INSURING AGREEMENT, Section III. TERRITORY AND CLAIMS MADE PROVISIONS," provides in pertinent part as follows:

> This Policy applies to acts, errors, omissions, or PERSONAL INJURIES which occur anywhere in the world provided that claim is made or suit is brought against the INSURED in the United States of America, its territories or possessions, and provided further, that such acts, errors, omissions or PERSONAL INJURIES occurred:
>
> > A.    During the POLICY PERIOD, and then only if claim is first made against the INSURED during the POLICY PERIOD and is reported to the Company in writing during the POLICY PERIOD, or the Extended Reporting Period (if applicable) . . . .

Another part of defendant's policy called "INSURING AGREEMENT, Section V. LIMIT OF LIABILITY, SUPPLEMENTARY PAYMENTS, AND DEDUCTIBLE AMOUNT, Subsection G" provides:

> . . . .

Two or more claims arising out of a single act, error, omission or PERSONAL INJURY or a series of related acts, errors, omissions or PERSONAL INJURIES shall be treated as a single claim.

All such claims, whenever made, shall be considered first made during the POLICY PERIOD or Extended Reporting Period in which the earliest claim arising out of such acts, errors, omissions or PERSONAL INJURIES was first made and reported to the Company in writing and all such claims shall be subject to the same Limit of Liability.

### *Plaintiff's Insurance Policy*

Plaintiff issued to BYA a claims-made "Broker/Dealer and Registered Representatives Professional Liability Policy" effective December 1, 2006, through December 1, 2007 ("plaintiff's policy").  Plaintiff's policy had limits of $2 million "Each Claim" and in the aggregate, with a $50,000 "Each Claim" Retention for Broker/Dealer insureds.

Plaintiff's policy includes a provision addressing "Interrelated Wrongful Acts."  It provides:

All Claims based upon or arising out of the same Wrongful Act or Interrelated Wrongful Acts shall be considered a single Claim and each such single Claim shall be deemed to have been made on the earlier of the following:

> A. when the earliest Claim arising out of such Wrongful Act or Interrelated Wrongful Acts was first made; or

> B. when notice was provided to the Insurer . . . concerning a Wrongful Act giving rise to such Claim.

Plaintiff's policy also addresses "Interrelated Wrongful Acts" under the exclusions section.  And, plaintiff's policy contains at least two provisions providing that plaintiff is not responsible for indemnifying or defending BYA for claims made during the policy period which are interrelated with claims made before the policy period.

*The Claims*

On September 22, 2005, Michael Knotts filed a lawsuit in the Court of Common Pleas for Summit County, Ohio, styled *Michael P. Knotts v. B & G Financial Network, Inc., et al.* On December 19, 2006, the National Association of Securities Dealers, Inc. ("NASD") notified BYA that Knotts had named it as a respondent in an arbitration proceeding. Knotts alleged that certain individuals, named as respondents in the arbitration proceeding, had fraudulently induced him to retire early, churned his investment accounts, and failed to advise him properly about issues affecting his financial portfolio ("the Knotts clam"). BYA tendered defense of the Knotts claim to defendant under defendant's policy.

On June 13, 2006, attorneys for Pauline and Donald Colaner notified BYA that the Colaners intended to bring an NASD arbitration proceeding against it and several individual respondents. The Colaners alleged that BYA negligently had failed to supervise the individual respondents, who provided unsuitable investment advice and made fraudulent misrepresentations about investments ("the Colaner claim"). BYA also tendered defense of the Colaner claim to defendant under defendant's policy.

In May 2007, Paul and Marie Wahl served BYA with a statement of claim they had filed with the NASD Department of Arbitration. About two months later, the Wahls amended their complaint to add 25 more claimants. The Wahls and the other complainants alleged, among other things, that they were sold unsuitable investment products and that BYA and others had engaged in flipping and churning of annuities ("the Wahl claims"). On June 22, 2007, Leia Farmer, chief compliance officer for BYA, tendered the Wahl claims to defendant under defendant's policy by sending a letter to

defendant's claims adjuster, Lancer Claims.  This letter asserted, "I would like to submit a claim under [defendant's policy]."

After BYA had tendered the Wahl claims to defendant, plaintiff also received the Wahl claims "for consideration of defense and indemnification under [plaintiff's] policy."  Doc. 31 at ¶ 18.  It does not appear, however, that BYA ever formally tendered the Wahl claims to plaintiff.  Nevertheless, on August 9, 2007, Lancer Claims asserted that plaintiff had agreed to defend the Wahl claims subject to a reservation of rights of no coverage.  BYA asked plaintiff to assign the defense of the Wahl claims to Jeffrey Jamieson of Blackwell Sanders, L.L.P. because he already was representing BYA in the Knotts and Colaner claims and was familiar with BYA's business practices.  Plaintiff approved the request and assigned Mr. Jamieson to defend the Wahl claims on behalf of BYA under plaintiff's policy.

### Plaintiff and BYA's Dispute Over the Wahl Claims

While the Wahl claims were still pending, a dispute arose between BYA and plaintiff about the number of "Each Claim" $50,000 retentions applicable to the Wahl claims.  Plaintiff asserted that the 26 Wahl claimants were distinct and unrelated to one another, and, therefore, each of the 26 claims had separate $50,000 retentions.  Conversely, BYA contended that the 26 Wahl claimants were interrelated by common facts and, therefore, they were subject to a single $50,000 retention.

Mr. Jamieson defended and ultimately settled the Knotts, Colaner, and Wahl claims on BYA's behalf.  For the Wahl claims specifically, BYA entered into a Mutual Release and Settlement with the Wahl claimants on March 3, 2009.  BYA paid its portion of the settlement, $669,092.21, on March 27, 2009.  BYA paid an additional $312,767.38

for fees and expenses related to the defense of the Wahl claims. Plaintiff prorated the defense costs (attributing the cost of defense equally to each one of the 26 claims), and then paid indemnity for each claim only to the extent that it exceeded the $50,000 "Each Claim" retention.

The total paid for defense and indemnity of the Wahl claims was $1,366,517.38. Plaintiff paid $384,657.79 and one $50,000 "Each Claim" Retention.  After deducting the amounts plaintiff had paid, the unreimbursed amount paid by BYA for defense and settlement of the Wahl claims is $931,859.59.

### BYA's Lawsuit Against Plaintiff

On October 5, 2009, BYA filed a declaratory judgment action against plaintiff in our Court, styled *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, Case No. 09-CV-2516 JAR/GLR.  In it, BYA asserted declaratory judgment and breach of contract claims arising from the $50,000 "Each Claim" retentions that plaintiff applied to the Wahl claims.  Among other things, BYA sought a declaration that the Wahl claims constituted a single "Claim" under plaintiff's policy, and, therefore, only one $50,000 retention applied (and not 26 separate $50,000 retentions).

Plaintiff and BYA filed cross motions for summary judgment in Case No. 09-CV-2516 JAR/GLR.  In its summary judgment briefing, plaintiff argued that the 26 Wahl claimants were unrelated but that, even if they were interrelated, they would relate back to a time before plaintiff's policy commenced, such that no coverage would apply.  Judge Robinson granted BYA's summary judgment motion, holding that only one $50,000 "Each Claim" retention applied to the Wahl claims, and entered judgment against plaintiff in the amount of $1,155,541.73.  Judge Robinson also held that the Wahl claims

did not share a "sufficient factual nexus" with the Colaner claim or Knotts claim, and, thus, it was not interrelated with those earlier claims.

Plaintiff appealed Judge Robinson's decision to the Tenth Circuit, and on August 9, 2013, the Tenth Circuit reversed the summary judgment order in BYA's favor and remanded the case for further proceedings. *See Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, 715 F.3d 1231, 1243 (10th Cir. 2013). The Tenth Circuit held that the Wahl, Knotts, and Colaner claims were all related because "[s]everal common facts connect the Wahl, Knotts, and Colaner Arbitrations." *Id.* at 1238. Under plaintiff's policy, if the Knotts, Colaner, and Wahl Claims are interrelated, they are considered a single claim deemed to have arisen at the time of the first claim. The Tenth Circuit also held that, "[b]ecause applying the plain language of [plaintiff's policy], the Wahl, Knotts, and Colaner Arbitrations were connected by common facts, circumstances, decisions, and policies, the district court erred in concluding the claims asserted in the Wahl Arbitration did not arise from wrongful acts interrelated to the wrongful acts committed outside [plaintiff's policy] period." *Id.* at 1240. Under the Circuit's holding, plaintiff's policy provides no coverage to the Wahl claims because they arose outside the policy period governing plaintiff's policy. But the Tenth Circuit also determined that BYA could assert an estoppel argument against plaintiff. *Id.* at 1242. That is the Tenth Circuit directed Judge Robinson on remand to determine whether plaintiff was estopped from denying coverage because BYA had detrimentally relied on plaintiff's actions representing that it was covering the Wahl claims. *Id.* at 1242–43.

After remand, Judge Robinson concluded that plaintiff was "estopped from denying full coverage of the Wahl Arbitration as a single claim" and that "BYA is

entitled to reimbursement of $931,859.59." *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, No. 09-CV-2516 JAR/GLR, slip op. (Doc. 217) at 31 (July 10, 2015). Judge Robinson deferred ruling on BYA's request for prejudgment interest until the parties provided additional briefing on the issue. *Id.*

On October 6, 2015, Judge Robinson granted BYA's request for prejudgment interest and entered judgment for BYA in Case No. 09-CV-2516 JAR/GLR. *See Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, No. 09-CV-2516 JAR/GLR, slip op. (Docs. 222, 223) (Oct. 6, 2015); *see also Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, No. 09-CV-2516 JAR/GLR, 2015 WL 5822225 (D. Kan. Oct. 6, 2015). Specifically, Judge Robinson ordered that "[BYA] is entitled to recover from [Lloyds] the amount of $931,859.59, plus prejudgment interest in the amount of $559,151.46, plus costs." *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, No. 09-CV-2516 JAR/GLR, slip op. (Doc. 223) at 1 (Oct. 6, 2015).

***Dispute in This Lawsuit***

While plaintiff always has disputed the claims that BYA asserted in Case No. 09-CV-2516 JAR/GLR, plaintiff now asserts here that defendant is liable to it for the amounts that Judge Robinson awarded against plaintiff in her October 6, 2015 judgment.[2] Plaintiff contends that coverage for the Wahl claims properly lies under defendant's policy because the Wahl, Knotts, and Colaner cases are interrelated and properly treated "as a single claim" that was filed timely during defendant's policy period. Plaintiff thus

---

[2]      Case No. 09-CV-2516 JAR/GLR is still pending before Judge Robinson. Lloyds has filed a "Motion for Amended or Additional Findings Pursuant to Rule 52(b) and Alternative Motion for New Trial Pursuant to Rule 59" in Case No. 09-CV-2516 JAR/GLR. Judge Robinson has not yet ruled on that motion. Judge Robinson also granted Lloyd's unopposed request to stay any proceedings to enforce the October 6, 2015 judgment against it until the Court rules on Lloyd's Motion for Amended or Additional Findings and Alternative Motion for New Trial.

argues that defendant (not plaintiff) is liable for defending the Wahl claims and indemnifying its settlement cost.

Plaintiff seeks a declaratory judgment under 28 U.S.C. § 2201(a) that defendant is liable for defense and indemnification of the Wahl claims.  Plaintiff also asserts that it is entitled to recover damages from defendant for:  (1) $384,657.79 (the amount plaintiff paid for defense and settlement of the Wahl claims); and (2) the amounts awarded in Judge Robinson's October 6, 2015 judgment in Case No. 09-CV-2516 JAR/GLR ("$931,859.59, plus prejudgment interest in the amount of $559,151.46, plus costs").  All in, plaintiff seeks to recover $1,875,668.84 in this lawsuit, plus all applicable pre and post-judgment interest and costs.

## II.     Legal Standard

Defendant has moved to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), asserting that the statute of limitations bars plaintiff's Amended Complaint.  To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint need not include "'detailed factual allegations,'" but must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

Although the statute of limitations is generally an affirmative defense, a court may resolve statute of limitations questions "on a Fed. R. Civ. P. 12(b) motion."  *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) (citing 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (1969)).  Specifically, "when

the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute." *Id.*

### III.    Analysis

Defendant seeks dismissal of plaintiff's Amended Complaint because, defendant contends, the statute of limitations bars plaintiff's claim.  Alternatively, defendant asks the Court to transfer this case to the Northern District of California under 28 U.S.C. § 1404(a).  The Court addresses the two forms of relief, in turn, below.

#### A.  Motion to Dismiss

First, defendant moves to dismiss plaintiff's Amended Complaint under Fed. R. Civ. P. 12(b)(1) and (b)(6), asserting that the claim plaintiff asserts in it is time-barred.  Defendant describes this case as a contract dispute about whether defendant was obligated to defend BYA against the Wahl claims.  And, if so, whether plaintiff is entitled to equitable contribution from defendant for the costs that plaintiff incurred defending BYA against that claim and ultimately was required to pay BYA for defense and indemnity.  Thus, defendant characterizes plaintiff's claim as one for equitable indemnity.  Defendant argues that its obligations to defend BYA are governed by defendant's policy, which, under Kansas choice of law rules, is governed by California law.  Defendant also contends that plaintiff's equitable indemnity claim accrued in March 2009, when BYA settled the Wahl claims, and because plaintiff asserted its claim outside of California's two-year statute of limitations for equitable indemnity claims, this lawsuit is time-barred.

In contrast, plaintiff argues that its claim is not one based in contract; instead, plaintiff says, its claim is one for equitable contribution and indemnity.  Under Kansas choice of law principles, plaintiff asserts, the substantive law of the state in which the injury occurs governs the

dispute.  Plaintiff argues the financial injury here is the judgment against it in the underlying

lawsuit pending before Judge Robinson.  Therefore, plaintiff asserts, the injury occurred in

Kansas, and Kansas law applies.  Plaintiff next contends that, under Kansas law, plaintiff's

claims for equitable contribution and indemnity do not accrue until the obligation of the third-

party's burden is discharged.  Plaintiff asserts that the statute of limitations under Kansas law did

not begin to run until Judge Robinson entered a final judgment in that lawsuit on October 6,

2015, some six months after plaintiff had filed this lawsuit.  Thus, plaintiff asserts, this lawsuit is

not barred by the statute of limitations.

To decide whether the statute of limitations bars this lawsuit, the Court first must

determine what law governs this dispute.  As explained above, the parties dispute this point.

Defendant asserts that California law applies, and plaintiff asserts that Kansas law applies.  For

self-evidence reasons, the Court begins with this choice-of-law question, and then turns to the

statute of limitations question.

### 1.   What law governs?

Plaintiff invokes the Court's subject matter jurisdiction under the diversity of citizenship

provision, 28 U.S.C. § 1332 (Doc. 31 at ¶ 6).  A federal court exercising diversity jurisdiction

applies the substantive law of the forum state, including its choice of law rules.  *Emp'rs Mut.*

*Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1170 (10th Cir. 2010) (citation omitted).  Because

the forum state is Kansas, the Court must follow the most recent judgments of the Kansas

Supreme Court.  *Safeco Ins. Co. of Am. v. Hilderbrand*, 602 F.3d 1159, 1163 (10th Cir. 2010)

(citing *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)).  And, if no

controlling precedent exists, the Court must predict how that court would rule.  *Id.* (citing

*Wankier*, 353 F.3d at 866).  The Court may consider lower state court decisions as persuasive

authority but they are not binding. *Id.* (citing *Long v. St. Paul Fire & Marine Ins. Co.*, 589 F.3d 1075, 1081 (10th Cir. 2009)). The Court also may examine "'decisions of other states, federal decisions, and the general weight and trend of authority.'" *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 476 (10th Cir. 2006) (quoting *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988)).

The Kansas Supreme Court had adopted a general rule that "'the law of the forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred.'" *Brenner v. Oppenheimer & Co., Inc.*, 44 P.3d 364, 376 (Kan. 2002) (quoting *Sys. Design v. Kansas City Post Office Emps. Cred. Union*, 788 P.2d 878, 881 (Kan. Ct. App. 1990)). "'Generally the party seeking to apply the law of a jurisdiction other than the forum has the burden to present sufficient facts to show that other law should apply.'" *In re K.M.H.*, 169 P.3d 1025, 1032 (Kan. 2007) (quoting *Layne Christensen Co. v. Zurich Canada*, 38 P.3d 757, 767 (Kan. Ct. App. 2002)).

Here, defendant argues that California law applies because its obligations to defend BYA are governed by defendant's policy. Under Kansas choice of law rules, the law of the place of contracting controls. *See, e.g.*, *Safeco Ins. Co. of Am. v. Allen*, 941 P.2d 1365, 1372 (Kan. 1997) (citation omitted). Defendant asserts that the place of contracting for defendant's policy is California, and thus California law applies.

But, as plaintiff correctly notes, plaintiff's claim against defendant here is not one based in contract. Indeed, plaintiff asserts no allegations that it entered into a contract with defendant. Instead, plaintiff asserts that defendant is liable to it for amounts plaintiff has paid or is obligated to pay to the parties' mutual insured, BYA. Doc. 31 at ¶¶ 33–35. This claim also is not based on defendant's policy with BYA, a contract to which plaintiff is not a party. Instead, the claim is

grounded in the equitable principle that a party, which has agreed to insure an obligation, must bear the burden of paying that obligation. *See Highlands Ins. Co. v. Patrons Ins. Co.*, 134 P.3d 36, 2006 WL 1379854, at *2–3 (Kan. Ct. App. May 19, 2006) (unpublished table opinion) (describing an equitable contribution claim as one "based on general principles of equity" and that " 'does not arise out of contract, for [the coinsurers'] agreements are not with each other . . . . Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden.'") (quoting *Truck Ins. Exch. v. Unigard Ins. Co.*, 94 Cal. Rptr. 2d 516, 522 (Cal Ct. App. 2000)); *see also U.S. Fidelity & Guar. Co. v. Liberty Surplus Ins. Corp.*, No. 6:06-cv-1180-Orl-31UAM, 2007 WL 3275307, at *3 (M.D. Fla. Oct. 31, 2007) (explaining that "the doctrine of equitable contribution is grounded on principles of equity and natural justice and not on contract" (citation omitted)).  Thus, the Court concludes that plaintiff's Complaint asserts equitable contribution and indemnity claims.

Plaintiff asserts that Kansas law applies to its equitable contribution and indemnity claims because Kansas applies the substantive law of the state where the tort occurred.  *See* Doc. 33 at 3 (citing *Hermelink v. Dynamex Operations E., Inc.*, 109 F. Supp. 2d 1299, 1303 (D. Kan. 2000)). That is, plaintiff contends, the Court must apply the law of the place where the wrong or injury was felt.  And, here, plaintiff says, the injury was sustained in Kansas because the judgment entered against plaintiff in the underlying lawsuit was entered in the District of Kansas.

But in the case that plaintiff cites, Judge Lungstrum applied this Kansas choice of law rule to tort claims for negligent and fraudulent misrepresentation, not equitable contribution or indemnity.  *Hermelink*, 109 F. Supp. 2d at 1303.  And, even if *Hermelink* had involved equitable contribution and indemnity claims like the ones at issue here, Judge Lungstrum explained that the state where the plaintiff felt the financial injury is the state where plaintiff resides.  *Id.*

14

(citation omitted). Thus, defendant argues that plaintiff's financial injury was not sustained in

Kansas—where the judgment was entered—but instead at plaintiff's residence in England.

Thus, defendant argues that *Hermelink* does not call on the Court to apply Kansas law.

Instead, defendant again argues that California law applies under Kansas choice of law

rules. In support of this argument, defendant cites one of only two Kansas federal court cases

that has decided a choice of law question in an equitable contribution and indemnity case.[3] In

*Seitter v. Schoenfeld*, Judge Saffels decided what law should apply to contribution and indemnity

claims by first explaining that Kansas follows the rule from the First Restatement of Conflicts

that the law of the place of the wrong controls. 88 B.R. 343, 349 (D. Kan. 1988) (citing *Ling v.*

*Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985); Restatement of Conflicts § 378). Judge Saffels

next recited that he was "not aware of any case law in Kansas which addresses the issue here: in

a claim for contribution, which 'wrong' should the court look to in order to determine the choice

of law?" *Id.* But Judge Saffels observed that authorities from other jurisdictions have held that

the court should look to the location of the "original wrong." *Id.* at 349–50 (citations omitted).

Following those authorities, Judge Saffels concluded that the law governing contribution and

indemnity claims was the place where the original injury occurred. *Id.* at 350.

*Seitter* involved a bankruptcy proceeding in which certain creditors asserted fraud and

negligent misrepresentation claims against the debtor based on alleged deficiencies in the

debtor's financial statements on which the creditors had relied when they had purchased the

debtor's stock. *Id.* at 348. The debtor filed a third party complaint against the accounting firm

which had examined and certified the debtor's financial statements predating the stock sale, and

the debtor asserted contribution and indemnity claims against that firm. *Id.* at 348–49. Judge

Saffels determined that the "original wrong" occurred in Illinois because the creditors accused

---

[3]      The Court has located no Kansas state court cases that have decided this issue.

the debtor of making the alleged misrepresentations during negotiations in Illinois and thus any injury sustained by the creditors had occurred at their offices in Illinois. *Id.* at 350. Thus, Judge Saffels concluded that Illinois law governed the contribution claim. *Id.*

In the only other case that the Court has located that addresses this issue, Judge Crow applied Judge Saffels' reasoning from the *Seitter* case. *See Fla. Farm Bureau Mut. Ins. Co. v. B&B Miller Farms, Inc.*, No. 87-1021-C, 1991 WL 201188, at *1 (D. Kan. Sept. 17, 1991). In this case, a plaintiff insurance company brought contribution, indemnity, and subrogation claims against defendants, who sold tainted alfalfa hay to the plaintiff's insured. *Id.* Defendant argued that Kansas law applied because it was the location where defendant sold the alfalfa hay. *Id.* But plaintiff asserted that Florida law applied because the underlying wrong occurred in Florida when two horses ingested the hay and became mortally ill. *Id.* Judge Crow concluded that the site of the injury was Florida, and thus held that Florida law governed the substantive rights of the parties. *Id.* at *2.

In the current case, defendant asserts that the "original injury" is its failure to defend the Wahl claims. This failure, defendant contends, gave rise to BYA's claims against plaintiff and plaintiff's current claims against defendant. Defendant asserts that its primary place of business is in California, BYA is a California corporation, and BYA and defendant entered into defendant's policy in California. This means, defendant argues, California law controls.

The Court cannot reconcile defendant's argument, however, with the applicable law in *Seitter* and *B&B Miller Farms*, the only two decisions that have considered the Kansas choice of law question for equitable contribution and indemnity claims. The Court predicts that the Kansas Supreme Court, if presented with this question, would follow Judge Saffels and Judge Crow's reasoning in these cases and determine the choice of law issue here based on the

principles that they applied.  Thus, the Court applies *Seitter* and *B&B Miller Farms* to decide the choice of law question.

In those two cases, our Court looked to the place of the "original injury" in the underlying tort for which one party was obligated to pay damages and sought contribution from another party who allegedly was liable for the same damages.  Here, plaintiff asserts that defendant is responsible to cover the Wahl claims.  Thus, the original injury is the Wahl claims themselves—that is, the claims by the Wahl complainants that BYA sold them unsuitable investment products and engaged in flipping and churning of annuities.  The record presented by the parties here does not provide enough information to determine the place of this alleged injury, although the Tenth Circuit opinion in Case No. 09-CV-2516 JAR/GLR recites that the Wahl claimants were residents of northeastern Ohio.  *See Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, 715 F.3d 1231, 1234–35 (10th Cir. 2013).

As stated above, the Kansas Supreme Court has defined the general rule for choice of law determinations:  "'[T]he law of the forum applies unless it is *expressly shown* that a different law governs, and in case of doubt, the law of the forum is preferred.'"  *Brenner*, 44 P.3d at 376 (quoting *Sys. Design*, 788 P.2d at 881) (emphasis added).  Here, defendant, as the party seeking to apply foreign law, bears the burden to present sufficient facts to establish that another state's law should apply.  *In re K.M.H.*, 169 P.3d at 1032 (quoting *Layne Christensen Co.*, 38 P.3d at 767).  Defendant has not met its burden to "expressly show" under the facts here that another state's law governs.  *See Brenner*, 44 P.3d at 376.  Thus, based on this record, the Court favors the conclusion that Kansas law governs this dispute because defendant has not shouldered its burden of showing that another state's law applies.  *See id.* (explaining that, in case of doubt, the law of the forum, is preferred); *see also Philippine Am. Life Ins. v. Raytheon Aircraft Co.*, 252 F.

17

Supp. 2d 1138, 1143 (D. Kan. 2003) (applying Kansas law because plaintiff had not "expressly shown that a different law governs the substantive issues in this case"); *U.S. Fidelity & Guar. Co.*, 2007 WL 3275307, at *3 (rejecting defendant's argument that the law of the place of contracting governed and applying the law of the forum state because defendant offered "no other basis for applying foreign law"). The Court might reach a different result, however, if presented with a fuller record containing sufficient facts for it to determine the place of the original injury. Nevertheless, at this time, the Court need not decide this issue because the Court reaches the same result on the current motion whether it applies Kansas or California law.

Where, as here, "the outcome of this dispute would be the same under the laws of [California] as under the laws of Kansas, the case presents a 'false conflict.'" *Brenner*, 44 P.3d at 372. As the Kansas Supreme Court has explained, "'[w]here there is no difference between the laws of the forum state and those of the foreign jurisdiction, there is a "false conflict" and the court need not decide the choice of law issue.'" *Id.* (quoting *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994)). Thus, the Court declines to decide the conflict of law issue because, as shown below, neither Kansas law nor California law bars plaintiff's claims on statute of limitations grounds.

### 2. Does the statute of limitations bar plaintiff's claim?

The Court proceeds to analyze whether plaintiff's claims are barred by the statute of limitations under either Kansas or California law. The Court begins its discussion with Kansas law and then turns to California law.

"The doctrine of equitable contribution has long been recognized by [the Kansas Supreme Court] as a remedy available to one who is compelled to bear more than his fair share of a common burden or liability to recover from the others their ratable proportion of the amount

paid by him." *Am. States Ins. Co. v. Hartford Accident & Indem. Co.*, 545 P.2d 399, 407 (Kan. 1976) (citing *Bituminous Cas. Corp. v. Am. Fire & Cas. Co.*, 387 P.2d 159 (Kan. 1963)). Equitable contribution "is a principle of equity applicable only where the situations of the parties are equal under a common liability or burden." *Id* (citing 18 Am. Jur. 2d *Contribution*, § 1, p. 6). "Between insurers, it is generally a prerequisite to enforcing contribution that their policies insure the same interests." *Id.* (citing *New Hampshire Ins. Co. v. Am. Emp'rs Ins. Co.*, 492 P.2d 1322 (Kan. 1972); 16 Couch on Insurance 2d, § 62:161, p. 570).

Kansas also recognizes a claim for indemnity in situations where "a contract of indemnity may be implied when one is compelled to pay what another party ought to pay." *Haysville U.S.D. No. 261 v. GAF Corp.*, 666 P.2d 192, 199 (Kan. 1983).

In Kansas, both equitable contribution and indemnity claims are governed by the same three-year statute of limitations. *See* K.S.A. § 60-512; *see also Ace Prop. & Cas. Ins. Co. v. Superior Boiler Works, Inc.*, 504 F. Supp. 2d 1154, 1161 (D. Kan. 2007) (citing the three year statute of limitations for contribution claims in Kansas); *Med James, Inc. v. Barnes*, 61 P.3d 86, 94 (Kan. Ct. App. 2003) (explaining that an indemnity claim in Kansas is subject to the three-year statute of limitations (citing *U.S. Fidelity & Guar. Co. v. Sulco, Inc.*, 939 F. Supp. 820, 826 (D. Kan. 1996))).

Defendant argues that the statute of limitations commenced in March 2009, when plaintiff paid to settle the Wahl claims. Thus, defendant argues, the three-year statute of limitations already had expired when plaintiff filed this lawsuit on March 25, 2015 (Doc. 1). But defendant cites no case law or other authority as support for this argument. *See* Doc. 38 at 1–4. The Court has found none either.

Conversely, plaintiff argues that its claim is timely because the statute of limitations commenced on October 6, 2015, when Judge Robinson entered the judgment against plaintiff in the underlying lawsuit and after plaintiff filed this lawsuit. Thus, plaintiff asserts, the statute of limitations does not bar its claim.

In Kansas, "[t]he right to contribution becomes complete and enforceable only upon payment of more than the claimant's share. It is the discharge by one common obligor of more than his fair share that gives rise to the right of contribution." *Cipra v. Seeger*, 529 P.2d 130, 133 (Kan. 1974) (citing 18 Am. Jur. 2d, *Contribution* § 9; *Mentzer v. Burlingame*, 97 P. 371 (Kan. 1908)). Thus, in Kansas, a contribution claim does not accrue until the claimant has discharged a judgment or debt. *See Mentzer*, 97 P. at 372 (holding "[t]he statute [of limitations] did not begin to run until the cause of action for contribution accrued, and this was when [the claimant] satisfied the debt."); *see also Comeau v. Rupp*, 762 F. Supp. 1434, 1477 n.8 (D. Kan. 1991) (stating that contribution "may be sought only when the judgment or debt has been paid in full" (citing *Cipra*, 529 P.2d at 133)).

Viewing the plaintiff's allegations in the light most favorable to it, plaintiff has not yet discharged its debt to BYA. Plaintiff paid a portion of that debt in March 2009 when the parties settled the Wahl claims. And, at least for now, plaintiff is obligated to pay another portion of the liability owed to BYA by the judgment entered in the lawsuit pending before Judge Robinson. Thus, under Kansas law, the statute of limitations on plaintiff's contribution claim has not yet begun to run because plaintiff has not discharged the judgment. Consequently, plaintiff's contribution claim is timely and not barred by the statute of limitations.

Also, an indemnity claim "does not commence to run until the [plaintiff] becomes obligated, by judgment or settlement, to pay [the liability]." *Barbara Oil Co. v. Kan. Gas Supp.*

*Corp.*, 827 P.2d 24, 37 (Kan. 1992).  Thus, plaintiff's indemnity claim accrued when it became obligated by the judgment in the underlying lawsuit.  That occurred when Judge Robison entered judgment on October 6, 2015.  Thus, plaintiff asserted its indemnity claim within the applicable three year statute of limitations.

The Court reaches the same result under California law.  Both parties characterize plaintiff's claim under California law as one for equitable indemnity.  *See* Doc. 32 at 2, Doc. 33 at 5.  In California, "an action for equitable indemnity does not accrue, for purposes of the statute of limitations, until the indemnitee pays a judgment or settlement that entitles him to indemnity . . . ." *Lantzy v. Centex Homes*, 73 P.3d 517, 528 (Cal. 2003) (citing *Valley Circle Estates v. VTN Consol., Inc.*, 659 P.2d 1160, 1166 (Cal. 1983)).  Here, plaintiff has not yet paid the judgment that it contends defendant must indemnify.  Thus, under California law, the statute of limitations has not yet accrued.

Thus, under either Kansas or California law, plaintiff has asserted its claims within the applicable statute of limitations period.  Consequently, the Court denies defendant's motion to dismiss this case on statute of limitations grounds.

### B.  Motion to Transfer Venue

As an alternative to dismissal, defendant requests the Court transfer this case to the United States District Court for the Northern District of California.  Title 28 U.S.C. § 1404(a) governs transfer of venue.  The statute provides:  "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).

The district court has broad discretion under § 1404(a) to adjudicate motions to transfer based upon a case-by-case review of convenience and fairness.  *Chrysler Credit Corp. v.*

*Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).  "The party moving to transfer a

case pursuant to § 1404(a) bears the burden of establishing that the existing forum is

inconvenient."  *Id.* at 1515 (citations omitted).  "'Merely shifting the inconvenience from one

side to the other, however, obviously is not a permissible justification for a change of venue.'"

*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting

*Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992)).

Our Circuit has identified the factors that a district court should consider when deciding

whether to transfer an action under 28 U.S.C. § 1404(a):

> the plaintiff's choice of forum; the accessibility of witnesses and other sources
> of proof, including the availability of compulsory process to insure attendance
> of witnesses; the cost of making the necessary proof; questions as to the
> enforceability of a judgment if one is obtained; relative advantages and
> obstacles to a fair trial; difficulties that may arise from congested dockets; the
> possibility of the existence of questions arising in the area of conflict of laws;
> the advantage of having a local court determine questions of local law; and, all
> other considerations of a practical nature that make a trial easy, expeditious
> and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1516 (citing *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145,

147 (10th Cir. 1967)); *see also Bartile Roofs, Inc.*, 618 F.3d at 1167 (citations omitted).

Defendant asserts that the Court should transfer this lawsuit to the Northern District of

California because, it contends, the case has no connection to Kansas.  First, defendant argues

that California law governs this dispute.  But, as explained above, even though the Court did not

need to decide the choice of law issue, the Court was unable to conclude that California law

applies here because defendant had not "expressly shown" that California law applies in this

action.  Thus, this factor disfavors transfer to California.

Plaintiff instead posits that the case should remain in this Court because Kansas law

applies, and, thus, the Court must consider "the advantage of having a local court determine

questions of local law." *Chrysler Credit Corp.*, 928 F.2d at 1516 (citing *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).  Again, the Court has not decided whether Kansas law governs the dispute here because it did not need to decide that issue to resolve the motion to dismiss.  Thus, the Court finds this factor a neutral one in its analysis of the transfer issue.

Defendant next contends that the convenience of witnesses, evidence, and the parties favors transfer.  The Court finds that this factor is also neutral.  While defendant is located in California, plaintiff's principal place of business is in London so the relative convenience of the parties is neutral.  Defendant also asserts that its witnesses, BYA's witnesses, and documents are located in California.  But the underlying lawsuit in which BYA obtained a judgment against plaintiff is located in this judicial district in Kansas.  Balancing these considerations, the Court finds that this factor also is neutral because though some evidence may be located in California, other evidence germane to the underlying lawsuit is located in Kansas.

Defendant also argues that if the case remains in Kansas, the Court will be unable to compel non-party witnesses, including BYA employees in California, to attend trial.  *See* Fed. R. Civ. P. 45(c) (establishing geographic limitations on witness trial subpoenas).  But defendant provides no facts showing that any out-of-state witnesses are unwilling or unable to travel to Kansas to testify at trial, or that no alternative arrangements exist for presenting their trial testimony.  Thus, the Court cannot discern whether compulsory process is even necessary here, and does not consider this a factor in its analysis.

Finally, plaintiff's choice of forum disfavors transfer.  Plaintiff chose this forum, and the Court finds no "strong" reason to disturb its choice.  *See Scheidt*, 956 F.2d at 965 ("[U]nless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." (internal quotation marks omitted)).

Considering all these factors, the Court concludes that defendant has not shouldered its burden to transfer venue under 28 U.S.C. § 1404(a).  Exercising its discretion, the Court denies defendant's request to transfer the case to the Northern District of California.

## IV.   Conclusion

For the reasons explained above, the Court concludes that the statute of limitations provides no bar to plaintiff's lawsuit here.  The Court thus denies defendant's motion to dismiss the case on statute of limitations grounds.  The Court also denies defendant's request to transfer the case to the Northern District of California.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Dismiss or, in the Alternative, to Transfer Venue (Doc. 19) is denied as moot.

**IT IS FURTHER ORDERED THAT** defendant's Renewed Motion to Dismiss or, in the Alternative, to Transfer Venue (Doc. 32) is denied.

**IT IS SO ORDERED.**

**Dated this 24th day of March, 2016, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**