LLOYDS OF LONDON SYNDICATE
2003,

       **Plaintiff,**

v.

FIREMAN'S FUND INSURANCE
COMPANY OF OHIO,

       **Defendant.**

**Case No. 15-CV-2681-DDC-GLR**

## MEMORANDUM AND ORDER

This Order considers whether a party properly can invoke work product protection to

shield a document that it inadvertently produced. Defendant Fireman's Fund Insurance

Company of Ohio argues that it can. Plaintiff Lloyds of London Syndicate 2003 takes the

opposite position. After considering the parties' arguments, the court concludes that work

product protection applies to the document and grants defendant's Motion for Protective Order

(Doc. 84).

## I. Factual Background

On November 7, 2016, plaintiff deposed defendant's retained expert, Jack Murphy.

Before the deposition, Mr. Murphy produced his written report as Fed. R. Civ. P. 26(b)(2)(B)

requires. Mr. Murphy also produced—albeit inadvertently—an email exchange as part of that

written report. Before Mr. Murphy produced his written report, defense counsel conferred with

him about what documents they considered to be protected from disclosure and directed him not

to produce those documents to plaintiff's counsel. One of those protected documents included

the email now at issue.  Doc. 84-2 ¶ 5.  Defendant asserts that the email is a work product

protected document under Fed. R. Civ. P. 26(b)(3)(A).

During Mr. Murphy's deposition, defense counsel realized that Mr. Murphy inadvertently

had produced this email.  Defense counsel immediately notified plaintiff's counsel of the

inadvertent disclosure of the document and demanded its return.  Plaintiff's counsel refused,

claiming that defense counsel had waived work product protection by disclosing the email in Mr.

Murphy's written report.

The parties then agreed to subject the email to a preliminary protective order.  Under the

terms of this order, plaintiff's counsel agreed not to question Mr. Murphy about the document or

provide the document to any of plaintiff's witnesses.  Also, plaintiff's counsel marked the email

document as Exhibit 4A at Mr. Murphy's deposition, and then the court reporter labeled the

document as one subject to a protective order.

About four months later, defendant filed a Motion for Protective Order asking to:  (1) bar

plaintiff's counsel and plaintiff's witnesses from reviewing or referring to the email; (2) require

plaintiff's counsel to return the original email from the deposition and destroy any copies of it;

and (3) direct the court reporter to remove Exhibit 4A from the record of the deposition.  Doc. 85

at 7–8.

## II.    Legal Standard

The Supreme Court first recognized the work product doctrine in *Hickman v. Taylor*.  *See*

329 U.S. 495, 508–11 (1947).  At its core, the work product doctrine serves to "shield[] litigants'

work-product from their opponents, . . . thus freeing lawyers to create such material without fear

of discovery."  *In re Grand Jury Proceedings*, 616 F.3d 1172, 1184 (10th Cir. 2010) (citations

omitted).  This doctrine also "shelters the mental processes of the attorney[,]" *United States v.*

*Nobles*, 422 U.S. 225, 238 (1975), and protects against disclosing an attorney's "mental impressions, conclusions, opinions, or legal theories." Fed. R. Civ. P. 26(b)(3)(B). As such, the work product doctrine, now codified in Rule 26(b)(3), prevents disclosure of documents or tangible things that an attorney has prepared in anticipation of litigation. Fed. R. Civ. P. 26(b)(3)(A). The party asserting work product privilege bears the burden to show that the doctrine applies to the document at issue. *In re Grand Jury Proceedings*, 616 F.3d at 1184–85.

## III.    Analysis

To decide whether the email deserves protection under the work product doctrine, the court must consider two questions. First, does the email constitute work product? Second, if the email is work product, did counsel's inadvertent disclosure of the email waive work product protection? The court addresses these two questions below.

### A.  Defendant's June 29, 2016 email qualifies for work product protection under federal statute and controlling case law.

As the party asserting work product protection, defendant must show each of the following: (1) the June 29, 2016 email is a document or tangible thing prepared by or for the defendant or its counsel; (2) the email qualifies as work product material prepared in anticipation of litigation; (3) the email does not qualify for an exception to the doctrine; and (4) defendant properly claimed that the email was subject to protection as trial-preparation material. Fed. R. Civ. P. 26(b)(3)–(5); s*ee also Zapata v. IBC, Inc.*, 175 F.R.D. 574, 576 (D. Kan. 1997) (identifying burdens for work product protection (citations omitted)). The parties do not dispute the first requirement, so the next four subsections address the other four requirements.

**1. The email qualifies as defense counsel's "mental impressions, conclusions, opinions, or legal theories" about impending litigation.**

To qualify for protection as the attorney's work product, the party or its attorney must show that it prepared materials in anticipation of litigation or for trial. Fed. R. Civ. P. 26(b)(3)(A). Our court has held that an attorney's scattered, handwritten notations in an expert report constituted "mental impressions, conclusions, opinions, or legal theories, made with an eye toward litigation." *Zapata*, 175 F.R.D. at 576 (citing *Hickman*, 329 U.S. at 508). In that case, the attorney inadvertently provided the incorrect copy of a report that contained her written notes. After reviewing those notes, the court concluded that they were the type of material protected by Rule 26(b)(3).

Here, defendant asserts in its Reply that "the email concerned correction of typographical errors in the expert's draft report and requesting that Mr. Murphy expand his discussion on two of the topics in his report." Doc. 94 at 2; *see also* Doc. 84-2 ¶ 3.[1] The email thus describes defense counsel's impressions of the expert's report, and it directs the expert to make certain changes to the report's substance. So, like the notes in *Zapata*, the email contains defense counsel's mental impressions, conclusions, opinions, or legal theories. Defense counsel also made the statements when anticipating litigation. Indeed, the parties already were litigating this lawsuit when defense counsel sent the email. The court thus finds that the email satisfies the work product requirements as codified in Rule 26(b)(3).

---

[1] The parties have not submitted the email into the record. The court describes the email as defendant describes it in its motion papers. Plaintiff does not challenge defendant's characterization of the email.

2. **The email does not qualify for any of the three exceptions to work product protection**.

Rule 26(b)(4)(C) presumes that all communications between an expert and a party's attorney are protected as work product unless the communications fall within one of the three exceptions. The rule provides no protection under these exceptions if the communication: (i) addresses the expert's compensation, (ii) identifies facts or data that the attorney provided and that the expert considered to form his opinion, or (iii) identifies assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed. Fed. R. Civ. P. 26(b)(4)(C)(i)–(iii).

Here, the email asks Mr. Murphy to make certain changes to his report, including expanding his discussion about two topics. From the parties' description of the email, its contents do not (i) discuss Mr. Murphy's compensation, (ii) provide facts or data, or (iii) establish assumptions that Mr. Murphy relied on in his expert report. So, the email does not qualify for any of the exceptions that might disqualify it from work product protection.

3. **Defendant satisfied Rule 26(b)(5)(B) by properly notifying plaintiff that it was claiming protection for the email.**

The final requirement that defendant must establish is that it properly claimed that the email was subject to protection as trial-preparation material under Rule 26(b)(5). That rule has two provisions, subsection A and B, that apply in different factual circumstances. Subsection A applies when a party seeks to withhold information otherwise discoverable. This subsection does not apply here because defendant did not "withhold[ ] information otherwise discoverable." Instead, Mr. Murphy produced the email under subpoena. And, the parties never identify any circumstances making the email "otherwise discoverable" during the litigation. So, the email does not meet the requirements of subsection A.

Subsection B applies when a party inadvertently produces information in discovery. In the absence of agreed-upon procedures, subsection B specifies that when a party claims that "information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it." Fed. R. Civ. P. 26(b)(5)(B). This kind of reactive or retroactive notification can take the form of a privilege log but also can "include the assertion of the claim during a deposition." Fed. R. Civ. P. 26(b)(5)(B) advisory committee's note to 2006 amendment. Here, defendant claimed privilege by notifying plaintiff's counsel in real time at Mr. Murphy's deposition. Doc. 84-1 at 20–21, 26; Doc. 84-2 ¶ 8. The court finds this claim of privilege adequate to satisfy Rule 26(b)(5)(B).

Plaintiff argues that defendant cannot assert work product protection here because defendant never produced a privilege log identifying the email as protected. The privilege log requirement is derived from Rule 26(b)(5)(A). That subsection requires a party withholding information otherwise discoverable to (1) "expressly make the claim" for work product; and (2) "describe the nature" of the information not produced in a manner that enables the other party to assess that claim but does not reveal the actual protected information. *Id.*

In contrast, Rule 26(b)(5)(B) contains no similar requirement. It just provides that a party "may notify [the receiving party] . . . of the [protection] claim and the basis for it." Fed. R. Civ. P. 26(b)(5)(B). Plaintiff provides no authority requiring the production of a log under Rule 26(b)(5)(B). And, even if that Rule required a log, our court has approached privilege logs in a manner that favors substance over form. *See Farha v. Idbeis*, No. 09-1059-JTM, 2010 WL 3168146, at *4 n.11 (D. Kan. Aug. 10, 2010) (noting that parties "typically" create a privilege log to satisfy Rule 26(b)(5)(A) but a formal privilege log is unnecessary when parties describe a

particular communication in narrative detail); *Sprint Commc'ns Co., L.P. v. Vonage Holdings Corp.*, No. 05-2433-JWL-DJW, 2007 WL 1347754, at \*2 (D. Kan. May 8, 2007) (explaining that an express claim of privilege "usually" is asserted in the form of a privilege log). Also, our court has held that "[a] privilege log is not always necessary as long as the opposing party and the court can assess whether the claimed privilege applies to the document." *Farha*, 2010 WL 3168146, at \*4 n.11.

On this record, the court finds that defendant has provided sufficient information about its claim of privilege—even without a privilege log—to satisfy Rule 26(b)(5)(B). Defendant's counsel notified opposing counsel of its claim that the email was work product immediately after the inadvertent disclosure, and it has described the nature of the email sufficiently for the court to assess the merit of the privilege claim. The court thus concludes that the June 29, 2016 email qualifies for work product protection. Now, the court must determine whether defendant waived that protection by inadvertently producing the email.[2]

---

[2] The court briefly addresses defendant's argument that plaintiff violated Rule 26(b)(5)(B). As the party receiving notice of a privilege claim for documents inadvertently produced, Rule 26(b)(5)(B) imposes a number of responsibilities. The parties dispute two of them. First, the receiving party must return, sequester, or destroy the specified information it received. Fed. R. Civ. P. 26(b)(5)(B). Second, the receiving party must not use or disclose the information until the court or parties resolve the claim of privilege. *Id.* The court finds that plaintiff complied with both responsibilities.

Here, plaintiff asserts that the mutual protective order that the parties entered during Mr. Murphy's deposition amounts to a sequestration and, thus, complies with Rule 26(b)(5)(B). The court agrees. Although the parties did not cite any authority that explains the term "sequester," the court's research has identified two cases discussing the term under Rule 26(b)(5)(B). *See, e.g.*, *Coburn Grp., LLC v. Whitecap Advisors, LLC*, 640 F. Supp. 2d 1032, 1040–41 (N.D. Ill. 2009) (holding it was reasonable for an attorney to refuse to return an inadvertently produced email but agree instead to "quarantine" the email while the parties formed their positions about the privilege dispute and briefed the issue for the court); *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, No. 14-60268-CIV, 2015 WL 1565310, at \*4 (S.D. Fla. Apr. 8, 2015) (noting that counsel receiving inadvertently produced documents had declined a request to destroy them but removed them from the case database and "sequestered" them). Although these cases never discuss what actions constitute appropriate sequestration under the Rule, the courts appear to approve of the attorney's actions. Plaintiff's actions here are similar. Plaintiff agreed to subject the document to the mutual protective order. Also, nothing suggests that plaintiff has used or disclosed the information while the parties resolve the claim. Both parties agreed to attach the email as

**B. Defense counsel's inadvertent disclosure of an email did not waive work product protection.**

Although defense counsel's email qualifies as work product material that does not fall under an exclusionary exception, it nonetheless may lose work product protection through wavier. Federal Rule of Evidence 502 codifies a standard for determining if inadvertent disclosures waive work product protections. Fed. R. Evid. 502(b).

Enacted in 2008, Rule 502 primarily adopts the majority view that an inadvertent disclosure of protected communications does not constitute a waiver if the producing party took reasonable actions to avoid the disclosure. *See* Fed. R. Evid. 502(b) advisory committee's note. *Compare Emp'r's Reinsurance Corp. v. Clarendon Nat'l Ins. Co.*, 213 F.R.D. 422, 428–31 (D. Kan. 2003) (applying common law five-factor test for inadvertent disclosures that requires the court to consider the reasonableness of precautions taken to prevent inadvertent disclosure and the time taken to rectify the error), *with* Fed. R. Evid 502(b) (stating that inadvertent disclosure is not a waiver when the party took reasonable steps to prevent disclosure and rectify the error, including (if applicable) complying with Fed. R. Civ. P. 26(b)(5)(B)).

Even after the enactment of Rule 502 in 2008, our court has continued to apply the five-factor test to determine whether a party has waived work product protection. *See Soc'y of Prof'l Eng'g Emps. in Aerospace, Int'l Fed'n of Prof'l & Tech. Emps., Local 2001 v. Spirit Aerosystems, Inc.*, No. 14-1281-MLB, 2015 WL 3466091, at \*2–3 (D. Kan. June 1, 2015) (applying the "five-factor test often utilized in this district" in light of Fed. R. Civ. P. 26(b)(5) and Fed. R. Evid. 502).

---

Exhibit 4A to the deposition transcript subject to the mutual protective order. Under these facts, the court concludes that plaintiff has properly complied with Rule 26(b)(5)(B).

Here, defendant and plaintiff disagree whether this five-factor test applies. Defendant

argues that it does; plaintiff argues that it does not. Plaintiff asserts that our court's decision in

*Employer's Reinsurance* supports its argument. The court disagrees. In *Employer's*

*Reinsurance*, that defendant inadvertently produced a four-page affidavit of their consulting

expert. 213 F.R.D. at 423–24. The defendant discovered this possible inadvertent production at

a deposition when plaintiff marked the affidavit as an exhibit. *Id.* at 429. The defendant

reserved the right to assert a work product protection claim later. *Id.* at 424. Six days after

initially raising its concerns at the deposition, the defendant confirmed in writing to plaintiff that

it intended to protect the affidavit as work product and, thus, claimed that it had produced the

document inadvertently. *Id.* When the plaintiff refused to return the document and strike it from

the deposition, that defendant filed a motion for protective order. *Id.*

*Employer's Reinsurance* characterized the issue as not whether the affidavit was

discoverable, but instead whether the defendant was entitled to its return even though the

defendant had produced it. *Id.* at 425. After considering various legal standards, the court

decided that the appropriate test to apply to protective order motions that seek the return of

allegedly inadvertently produced materials is the five-factor analysis test. *Id.* at 427.

Here, plaintiff argues that because defendant's expert, Mr. Murphy, was a testifying

expert witness and not a consulting expert witness like the one in *Employer's Reinsurance*,

applying the five-factor test is improper. Doc. 91 at 5. Plaintiff argues that *Employer's*

*Reinsurance* is distinguishable because it was a "case of first impression in this district." *Id.*;

*Emp'r's Reinsurance*, 213 F.R.D. at 427. But, the issue of first impression was about inadvertent

disclosures in an earlier case and whether those disclosures could apply to a later, related action.

*Emp'r's Reinsurance*, 213 F.R.D. at 424–26; *see also Frontier Refining, Inc. v. Gorman-Rupp*

9

*Co.*, 136 F.3d 695, 703–04 (10th Cir. 1998) (concluding that, at a minimum, the work product

doctrine extends to closely-related subsequent litigation).  That is not the issue here.  Plaintiff's

argument is unpersuasive.

Also, our court routinely has applied the five-factor test in other cases involving different

actors who inadvertently disclosed information.  *See*, *e.g.*, *Zapata*, 175 F.R.D. at 577 (applying

the five-factor test when a retained expert witness inadvertently produced report); *Kan. City*

*Power & Light Co. v. Pittsburg & Midway Coal Mining Co.*, 133 F.R.D. 171, 172 (D. Kan.

1989) (applying the five-factor test when an attorney inadvertently produced documents);

*Wallace v. Beech Aircraft Corp.*, 179 F.R.D. 313, 314 (D. Kan. 1998) (same).  From these cases,

the court concludes that it does not matter who inadvertently produced the information only that

someone inadvertently produced it.  The court thus applies the five-factor test here.

The five-factor test analyzes:  (1) the reasonableness of the precautions which the party

took to prevent inadvertent disclosure; (2) the time which the party took to rectify the error; (3)

the scope of discovery; (4) the extent of disclosure; and (5) the overriding issue of fairness.

*Emp'r's Reinsurance*, 213 F.R.D. at 428; *Zapata*, 175 F.R.D. at 577.  The court considers each

factor below.

**1.**  ***Factor One:  The reasonableness of precautions taken to prevent***
***inadvertent disclosure***

Defendant argues that it took reasonable precautions when defense counsel wrote

"Attorney work product protected from disclosure by FRCP 26(b)(4)(B) & (C)" at the top of the

email.  Doc. 85 at 4.  Defendant notes how *Employer's Reinsurance* found it "significant" that

the inadvertently disclosed document was labelled "ATTORNEY WORK PRODUCT."  *Id.*

(citing *Emp'r's Reinsurance*, 213 F.R.D. at 430).  But there, the court referenced this

"significant" fact in its analysis of the fourth factor, not the first.  *Emp'r's Reinsurance*, 213

F.R.D. at 430. Indeed, such a heading can prove helpful after inadvertent disclosure. But, the first factor looks to precautionary measures taken to prevent inadvertent disclosure.

Here, defense counsel affirmatively decided not to review Mr. Murphy's expert report. Doc. 85 at 5. Instead, defense counsel "reasonably relied upon Mr. Murphy to cull out the protected documents" on his own because he had "extensive experience in litigation in federal court" and defense counsel had briefed him about the matter. *Id.* Although counsel could have monitored Mr. Murphy's culling more closely, the court nonetheless finds counsel's actions reasonable.

In a factually similar case, our court "observe[d] that defendant's attorney could have been more careful by personally inspecting the [expert's] report before sending it out, on balance, this [first] factor weighs in favor of finding the work product protection was not waived." *Zapata*, 175 F.R.D. at 577. *Zapata* held that the reasonableness of precautionary measures requires consideration of the amount of notice a party received before production, the number of documents that the party actually produced, and how many of those documents they produced inadvertently. *Id.* Applying these factors, our court's case law counsels against finding a waiver when a party must sift through a large expert report in a short amount of time and only produces a small number of documents inadvertently. *See id.* (finding evidence of reasonable precautionary measures when defense counsel had seven days' notice, produced more than 1,000 documents, and inadvertently produced just one document during three and half years of litigation); *see also Wallace*, 179 F.R.D. at 314 (holding defendant had taken reasonable precautions to prevent inadvertent disclosure because defendant's attorney and an experienced legal assistant each reviewed thousands of documents before production); *but see Am. Cas. Co. v. Healthcare Indem., Inc.*, No. 00-2301-DJW, 2002 WL 1156273, at *1 (D. Kan. Apr. 19, 2002)

(finding precautionary measures inadequate when the producing party had 17 days to produce the documents compared to the seven-day window in *Zapata* and inadvertently produced more than one privileged document).

Here, defense counsel had at least 17 days to oversee production of materials in Mr. Murphy's expert report. *See* Doc. 63 at 2. The report contained some 1,500 pages of material. Doc. 84-1 at 9–10 (the parties stipulated that report was six to seven inches thick). And so far, the email is the only document that defendant has produced inadvertently. Like *Zapata*, defense counsel might have taken fuller precautions, but the court nonetheless concludes that counsel's actions did not waive work product protection. The court thus concludes that this first factor slightly weighs against waiver.

### 2. *Factor Two: The time taken to rectify the error*

The court finds that the second factor heavily favors finding no waiver. The relevant time for rectifying any error begins when the party discovered, or with reasonable diligence should have discovered, the inadvertent disclosure. *Emp'r's Reinsurance*, 213 F.R.D. at 429 (citing *Zapata*, 175 F.R.D. at 577). Here, defense counsel notified plaintiff's counsel immediately when the inadvertent disclosure was revealed at the deposition. Also, the parties met and conferred on and off the record at the deposition in an effort to resolve the dispute, just as D. Kan. Rule 37.2 requires. The court thus finds that defense counsel's prompt action weighs against waiver.

### 3. *Factor Three: The scope of discovery*

The court also finds that the third factor weighs against waiver. In *Zapata*, our court found that the inadvertent disclosure of one document was minor vis-a-vis the number of documents—roughly 40,000—that defense counsel had produced. 175 F.R.D. at 577. Likewise, this case involves only one inadvertently produced document. But, the court lacks information about the total number of documents defendant has produced during the entire litigation. Even without this information, this single inadvertent disclosure is minor. *Cf. Am. Cas.*, 2002 WL 1156273 at *3 (finding the third factor favored waiver because, although the number of documents produced was unknown, the defendant's production of more than 90 inadvertent documents suggested disclosure was not minor). The court concludes that this third factor weighs against waiver.

### 4. *Factor Four: The extent of disclosure*

Our court has held that the inadvertent production of protected material just to opposing counsel is not sufficiently extensive disclosure to constitute waiver. *See*, *e.g.*, *Monarch Cement Co. v. Lone Star Indus., Inc.*, 132 F.R.D. 558, 560 (D. Kan. 1990) (finding disclosure was not extensive where the document was only disclosed to opposing counsel); *Wallace*, 179 F.R.D. at 315 (same). The same situation exists here. Defendant only disclosed the email to plaintiff's counsel. Indeed, plaintiff concedes that it has not shared the email with its expert or any other person. Doc. 91 at 2. Under these circumstances, no extensive disclosure has occurred.

Also, plaintiff's counsel never questioned Mr. Murphy about the email after defense counsel timely notified them of the inadvertent disclosure. Both parties agreed to attach the email as Exhibit 4A to the deposition transcript subject to a mutual protective order. And, no

party has used the email for any purposes.  Under these facts, the court finds that the fourth

factor weighs against waiver.

### 5. *Factor Five:  The overriding issue of fairness*

Key to the court's determination of the fifth factor is the relevancy of the disclosed

documents.  *Emp'r's Reinsurance*, 213 F.R.D. at 431.  Here, the email suggested corrections to

typographical errors in Mr. Murphy's draft report and asked that he expand his discussion on two

topics.  Nothing suggests that the email contained relevant information that could affect the

claims asserted or add any new theories.  The court also finds that plaintiff will sustain no

prejudice if the court refuses to find a waiver and orders plaintiff to return the email.  Losing

access to an inadvertently produced document, and thus any tactical advantage that the document

may provide, does not amount to prejudice sufficient to find a waiver.  Indeed, our court has

recognized that no compelling reason exists "to rigidly apply a waiver of work product" over a

few inadvertently-produced documents from a pool of thousands when the non-disclosing party's

"arguments . . . reduce themselves to little more than a claim that they should not be deprived of

a tactical advantage fortuitously gained by a party's inadvertence."  *Zapata*, 175 F.R.D. at 578

(quoting *In re Wyo. Tight Sands Antirust Cases*, No. 85-2349-S, 1987 WL 93812, at *5 (D. Kan.

Sept. 11, 1987)).  The court applies this reasoning equally to the facts here.  The final factor—

fairness—thus weighs against waiver.

Considering all five factors collectively, the court finds that they favor a finding that no

waiver has occurred here.  Defendant did not waive work product protection when its expert

inadvertently disclosed the July 29, 2016 email to plaintiff.

**IV.     Conclusion**

The court finds that the email is protected work product and that defendant never waived that protection. Defendant thus is entitled to the email's return. The court grants defendant's motion and orders that: (1) plaintiff's counsel and its witnesses may not review or refer to the June 29, 2016 email; (2) plaintiff's counsel must return the June 29, 2016 email and any copies in its or plaintiff's custody or control to defendant; and (3) the court reporter shall remove Exhibit 4A from the deposition record. The court directs plaintiff's counsel to provide the court reporter with a copy of this Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Fireman Fund Insurance Company of Ohio's Motion for Protective Order (Doc. 84) is granted.

**IT IS FURTHER ORDERED THAT:**

1. Plaintiff's counsel and its witness may not review or refer to the June 29, 2016 email;

2. Plaintiff's counsel must return the June 29, 2016 email and any copies in its or plaintiff's custody or control to defendant; and

3. The court reporter shall remove Exhibit 4A from the deposition record and plaintiff's counsel must provide the court reporter with a copy of this Order.

**IT IS SO ORDERED.**

**Dated this 6th day of July, 2017, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
